```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
```

```
UNITED STATES OF AMERICA,

        v.                           Criminal No. 06-126 (JBS)

WILLIAM BROWN, RASHEEN MINES,
WILLIAM HERNANDEZ, and               OPINION
LAWRENCE JOHNSON,

               Defendants.
```

APPEARANCES:

Christopher J. Christie
United States Attorney
By:  Steven J. D'Aguanno, Assistant U.S. Attorney
     Howard Wiener, Assistant U.S. Attorney
U.S. ATTORNEY'S OFFICE
401 Market Street, 4th Floor
Camden, New Jersey 08101
     Attorneys for the United States of America

Lisa Evans Lewis, Assistant Federal Public Defender
Christopher H. O'Malley, Assistant Federal Public Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
800-840 Cooper Street
Suite 350
Camden, New Jersey 08102
     Attorneys for Defendant William Brown

James P. Lyons, Esq.
Suite 1400
230 S. Broad Street
Philadelphia, PA 19102
     Attorney for Defendant Rasheen Mines

Fortunato N. Perri, Esq.
McMONAGLE, PERRI & McHUGH, PC
One Penn Square West
30 South 15th Street, Suite 701
Philadelphia, PA 19102
     Attorney for Defendant William Hernandez

Edward F. Borden, Jr., Esq.
EARP COHN, PC
20 Brace Road, 4th Floor
Cherry Hill, NJ 08034
      Attorney for Defendant Lawrence Johnson

**SIMANDLE**, District Judge:

This matter is before the Court upon the motions to suppress the pretrial identifications of Defendants William Brown and Rasheen Mines (collectively, the "Defendants").  Defendants argue that the photo arrays used in the pretrial identification process were unnecessarily suggestive and violative of Defendants' due process rights.  For the reasons expressed below, the Court finds that the photo arrays used in the pretrial identification process were not unnecessarily suggestive and therefore, Defendants' motions to suppress will be denied.

**I.    FACTS**

On December 27, 2005, Detective James Dougherty of the Gloucester Township Police Department[1] was informed that a home invasion occurred in Erial, New Jersey on December 26.  Detective Dougherty was charged with the task of showing photo arrays to the victims of the home invasion for identification purposes.  Detective Dougherty testified that he had no special training in presenting photo arrays other than on-the-job training, but had conducted more than ten photograph identifications.

---

[1]  Detective Dougherty testified that he was employed by the Gloucester Township Police Department as a police officer since 1985 and as a detective since 1995.

Detective Dougherty was not involved in the preparation of the photo arrays used in the pretrial identification procedure. Instead, Investigator William Townsend was charged with generating the photo arrays. Investigator Townsend, who has been an investigator at the Camden County Prosecutor's Office for seven years with the major crimes unit, testified that, on December 26, 2005, he was told about a home invasion and asked to assess the crime scene and interview witnesses. Investigator Townsend learned that, on the night of December 26, 2005, three individuals suspected of committing the home invasion were arrested and taken into custody in Philadelphia after a police pursuit.

After learning the names of the individuals in custody, Investigator Townsend attempted to secure photographs of the three individuals. First, Investigator Townsend checked the Camden County system to see if Camden County had pictures of the individuals. It did not. After being unable to obtain an electronic version of the suspects' photographs from the Philadelphia Police Department, Investigator Townsend and Detective Stollsteimer (Townsend's partner) took photographs of Defendants Brown and Mines using a digital camera and emailed them to Officer Mogck of the identification unit of the Camden County Sheriff's Department. Investigator Townsend then

requested that Officer Mogck formulate a photo array to be used for identification purposes.[2]

The photo arrays were delivered by Investigator Townsend to the Gloucester Township Police Department on December 27. Detective Dougherty testified that he had no role in putting the photo arrays together and did not know if a suspect was contained in any of the photos in the photo array. In the Gloucester Township Police station, Detective Dougherty showed 11 photo arrays to five victims of the home invasion (Brian McMorrow, Daniel Agront, Evelise Agront, Sarita Agront, and Israel Colon.)

Detective Dougherty followed the same careful procedure in showing each witness a photo array. First, he read the instructions from the Photo Display Instruction sheet to the witness and gave the witness the opportunity to read the Photo Display Instruction sheet to him or herself. (See Gov't Ex. 2.) According to the instructions, the witness was told that the photo of the person suspected of the crime may or may not be in

---

[2] Townsend requested the photographs from the Philadelphia Police Department at 3:00 a.m. on December 27, 2005. Investigator Townsend testified that (1) the Philadelphia Police Department detectives told him that the Philadelphia system was not capable of emailing photographs and (2) the Camden County Sheriff's Office required an electronic version of the photograph. Investigator Townsend also testified that the Camden Sheriff was not able to take a printed mug shot from Philadelphia and use it to compose the photo arrays, which are produced electronically. Hence, Townsend and Stollsteimer took their digital photos of the suspects and downloaded them in a usable format for prompt preparation of the arrays by Officer Mogck.

4

the photo array.  The date and time of the identification and the witness's name was then recorded on the Photo Display Instruction sheet and signed by the witness.  Detective Dougherty then signed the instruction sheet as having witnessed the witness' signature.  Detective Dougherty then showed the witnesses each photo in the array in a sequential fashion.  At no time did any victim-witness view all photos in the array side-by-side.

After Detective Dougherty showed all eight photographs in the photo array, he read the Photo Display Results Form to each witness and recorded the date, time and place of the photo display, the name of the witness and anyone present during the display, the number of photos shown to the witness and in what sequence the photos were displayed.  Most importantly, Dougherty recorded the photograph number selected by the witness on the Photo Display Results Form.[3]  (Gov't Ex. 2.)  Detective Dougherty followed this same procedure when he displayed all eleven photo arrays.

During these procedures, which Dougherty conducted and documented for each witness separately, no witness identified the photo of defendant William Johnson.  Serita Agront identified Brown (Ex. G-9, Photo 4) and Mines (Ex. G-7, Photo 8), Israel Colon identified Brown (Ex. G-10, Photo 7) and Mines (Ex. G-12,

---

[3] The Court notes too that the Photo Display Result Form contained an area to check if the witness made no identification.

Photo 8), Brian McMorrow identified Mines (Ex. G-2, Photo 8), and Daniel Agront identified Mines (Ex. G-3, Photo 6.)  Witness Evelise Agront made no identification (Exs. G-4, G-5, G-6.)

According to the Government, at the time the police questioned the victims and showed them the photo arrays, each of the four victims that positively identified either Defendants Brown and Mines were asked whether he or she had viewed any television news reports or internet reports about the crime. (Gov't Br. at 16.)  All reported that they had not viewed such news reports.  (Id.)

However, around midnight on December 26 and into the early morning hours of December 27, 2005, Detective Ron Middletown, Detective J. Stollsteimer, Patrolman Pat Cunane, and Investigator Townsend, all of the Gloucester Township Police Department, took statements from the victims.  One victim, Israel Colon, described the individuals who committed the crime as "three black males," one being approximately a 5 foot, 7-inch, 150 pound, light skinned black male of approximately twenty years of age.  The man was wearing a "dark colored mask" and the victim could only see his eyes and eyebrows.  According to Colon, the second subject was approximately 6 feet tall, weighed over 200 pounds, was in his mid-twenties and wore a "Muslim type of beard [that was] kind of long" and a "black skully."  The third subject also had a beard, was over six feet ("maybe 6-2, 6-3") and had a

6

medium complexion.  A second victim, Evelise Agront, stated that one subject was wearing a mask but that she could see his eyes and "his dark skin."  The subject was approximately 5-9, weighing 180 lbs.  She described a second subject as having a "chunky" face and was light skinned.  Finally, Daniel Agront stated to the police that all three subjects were "African American" and that two were "in their high twenties" and "one...looked real young."  One subject was a tall black male in his late twenties who was "muscular."  Another subject was described as having a "chubby face" with a "full beard."

## II.  **DISCUSSION**

In their motion papers and at a hearing on August 10, 2005, Defendants Brown and Mines argued that the pretrial identification procedure from which they were identified by the victims of the robbery was unnecessarily and impermissibly suggestive in two ways.  First, Defendants argue that the background and angle of the Defendants' photographs are different from any of the other seven photographs contained in the photo array.  (Def. Brown's Br. at 12.)  According to Defendant Brown, Brown's photograph is different from the other seven contained in the array in that (1) there is something hanging on the wall in the background of Brown's picture (while the other photographs in the array contain a plain white background) and (2) Brown appears farther away from the camera than the individuals in the other

7

photographs, with his shoulders exposed and head tilted to one side.  (Id.)  Second, the Defendants argue that the initial identification procedure was unnecessarily suggestive because there is the possibility that the victims saw pictures of the Defendants on television news or the internet before the victims made their identification.  (Id. at 13.)  Defendants argue that, because these differences gave rise to a substantial likelihood of misidentification, the pretrial identifications should be suppressed.

In the Third Circuit, "eyewitness testimony will be permitted unless the pretrial identification procedure was so unnecessarily suggestive as to give rise to a substantial likelihood of irreparable misidentification that admitting the identification testimony would be a denial of due process." United States v. Clausen, 328 F.3d 708, 713 (3d Cir. 2003).  An identification procedure (such as showing a witness a photographic array) violates due process if it "is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification . . . ."  United States v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006)(emphasis added)(citing Manson v. Brathwaite, 432 U.S. 98, 107 (1977)).

### A. Unnecessarily Suggestive

Unnecessary suggestiveness "contains two component parts: that concerning the suggestiveness of the identification, and

8

that concerning whether there was some good reason for the failure to resort to less suggestive procedures." United State v. Steven, 935 F.2d 1380, 1389 (3d Cir. 1991). The defendant has the burden of proving that the identification procedure was impermissibly suggestive. Id. (citing Reese v. Fulcomer, 946 F.2d 247, 259 (3d Cir. 1991)).

Showing a witness a photo array, for example, "can constitute a denial of due process when police attempt to emphasize the photograph of a given suspect, or when the circumstances surrounding the array unduly suggest who an identifying witness should select." U.S. v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003). Minor differences in the background color, shading or angle of a defendant's photograph when shown as part of a photographic array, however, are not sufficient to render a pretrial identification unnecessarily suggestive. Id. In Lawrence, the Third Circuit held that a photo array -- in which six photographs were displayed on a single page, each photograph had varying degrees of color distortion and shading and where the defendant was "the only [person photographed who was] smiling, bare chested, and wearing jewelry" -- was not impermissibly suggestive. Id. The court found that the distinguishing characteristics between the defendant's photo and the other five photos in the array "can, for the most part, be attributed to the fact that police had to use a personal photo of

9

[the defendant while] other photos were 'mug shots.'" Id. These minor differences alone did not prejudice the defendant; to the contrary, "common sense suggests that a witness is less likely to identify a personal photo than one appearing to be a 'mug shot' that would suggest a prior police record . . . ." Id. A number of other circuit courts have held similarly. See United States v. Brudeau, 168 F.3d 352, 357 (9th Cir. 1999)(holding that darker hue to defendant's photograph in array was "insubstantial difference[]" that did not create impermissible suggestion that defendant was offender);[4] United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994)(rejecting defendant's claim that a photo array was unnecessarily suggestive because his photograph was "slightly brighter and slightly more closeup than the others" and finding "that these differences did not render the array suggestive"); Mitchell v. Goldsmith, 878 F.2d 319, 323 (9th Cir. 1989)(holding that various background colors among the photographs did not render lineup unduly suggestive.)

---

[4] Specifically, the Ninth Circuit Court of Appeals stated:

We do not agree that the dark hue, facial expression, or placement of the photograph suggested that the witnesses should choose [the defendant's] photograph. Such insubstantial differences between the defendant's photograph and the others do not in themselves create an impermissible suggestion that the defendant is the offender.

United States v. Burdeau, 168 F.3d 352, 357 (9th Cir. 1999)

### B. Substantial Risk of Misidentification

If the Court concludes that the photo array of either Defendant Brown or Mines was unnecessarily suggestive, the Court must then determine whether the procedure gave rise to a substantial likelihood of misidentification. See Neil v. Biggers, 409 U.S. 188, 198-99 (1972); Brownlee, 454 F.3d at 138-39. In Biggers, the Supreme Court held that a "suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability . . . [for reliability is the] linchpin in determining the admissibility of identification testimony." Biggers, 409 U.S. at 139 (citing Brathwaite, 432 U.S. at 106.) In order to determine whether an identification is reliable, even if the identification procedure is suggestive, the district court must "look to the totality of the circumstances" and consider factors including: "(1) the opportunity of the witnesses to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witnesses' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation." Brownlee, 454 F.3d at 139 (citing Biggers, 409 U.S. at 199.)

Applying the Biggers factors to the witness identification in Lawrence, the Third Circuit held that, although the

11

defendant's photograph was the only one depicting an individual not wearing a shirt and wearing jewelry so that defendant's photograph "stood out," these identifying characteristics "are not sufficient, given the totality of the circumstances . . . to deny [the defendant] due process because [other] circumstances establish the reliability of the identification." Lawrence, 349 F.3d at 116.  Instead, the totality of the circumstances –- namely, that (1) each of the Government's witnesses had a clear, unobstructed opportunity to observe the crime (and did so at close range), (2) one witness had spoken with the defendant immediately before the crime, and (3) the witnesses knew the defendant and had an opportunity to observe the defendant before any violence associated with the crime occurred –- established the reliability of the identification.  Id.

### C. Analysis and Findings

The Court notes that there are slight differences in the background and shading between the pictures of Mines and Brown and the other seven photos contained in the photo arrays. Specifically, Defendants are correct that, (1) there is something hanging on the wall in the background of the pictures of Mines and Brown while the other seven pictures are taken in front of a plain white background and (2) the pictures of Mines and Brown are slightly darker than the other seven pictures, if compared side-by-side.  Moreover, Brown's photograph differs from the

12

other seven photographs in that Brown's shoulders are exposed and his head is slightly tilted to one side.  Such minor differences in shading, coloring and angle, however, under <u>Lawrence</u> and authority in other circuits, do not make the photo array unnecessarily suggestive.  This is particularly true when, as here, the photos are displayed in a sequential fashion, rather than side-by-side in a one-page photo array where a witness can directly detect and compare the differences in the photographs.  Here, when viewed sequentially, the differences among the eight photos in an array are not substantial.  That one photo has some sort of background or is slightly darker in tone is not particularly apparent when viewed in sequence.  The actual photos of Mines and Brown are of the same general quality, size and appearance as the comparison photos.  Every photo is the same size and bears a seven-digit serial number subscript.  Moreover, it is clear that the comparison photos each bear the characteristics of the particular subject, such as fullness of face, facial hair, and skin tone.  It is clear that the authorities, in assembling each array, chose photos for comparison that were truly comparable in these characteristics.

Moreover, the procedures followed by Detective Dougherty were fair and neutral.  Dougherty did not know the identity of the suspects, he displayed the photos in random order, and he communicated no information to the eyewitnesses.  While the use

of the actual mug shots of these suspects would have removed any issue whatsoever, the Court finds that the procedure utilized here was necessitated by the incompatibility of the systems of the place of arrest and booking (Philadelphia) and the place of preparation of the photo display (Camden County), and that there was good reason not to use the actual mug shots under these circumstances.

Thus, Defendants have failed to satisfy their burden of proof, that the identification procedure was impermissibly suggestive, or that there was an undue failure to resort to even less suggestive means.

Even if the Court were to find that the photo arrays were unnecessarily suggestive, the victims' identification of Brown and Mines have other indicia of reliability.  For example, the victim observed the Defendants in adequate lighting and in close proximity for several minutes.  Moreover, the statements of the victims demonstrate a significant level of certainty in their identification.  Finally, the length of time between the crime and identification was very short as the victims were shown the photo arrays only 24 hours after the crime.  The risk of misidentification under these circumstances was not undue.  Thus, under the totality of the circumstances, there was is no constitutional defect in the victims' pretrial identification of Defendants.

14

### III. <u>CONCLUSION</u>

For the reasons expressed above, the motion to suppress pretrial identification by Defendants Brown and Mines will be denied. The Court will enter the accompanying Order.


<u>October 25, 2006</u>                             <u>s/ Jerome B. Simandle</u>
DATE                                        JEROME B. SIMANDLE
                                            United States District Judge